UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff | ) | |
| v. | ) | CASE NO. 4:19CR40042-1 |
| DARWIN GONZALEZ REYES, | ) | |
| Defendant | ) | |

## SENTENCING MEMORANDUM OF DARWIN GONZALEZ REYES

The defendant, Darwin Gonzalez Reyes, submits this memorandum and requests a sentence of 48 months incarceration, with 60 months of supervised release and a recommendation to the Bureau of Prisons RDAP 500 hour program, as well as whatever additional terms the court deems appropriate.

For the reasons set forth below, the defendant("Gonzalez Reyes") comes before the Court for sentencing after having pled guilty to a three count indictment alleging in Count One - Conspiracy to Distribute and to Possess with Intent to Distribute 400 Grams or More of Fentanyl and 100 Grams or More of Heroin; Count Two - Distribution of and Possession with Intent to Distribute 40 Grams or More of Fentanyl and 100 Grams or More of Heroin; and Count Three - Distribution of and Possession with Intent to Distribute 40 Grams or More of Fentanyl and Heroin. Mr. Gonzalez Reyes submits this sentencing memorandum to aid the Court in determining an appropriate sentence under 18 U.S.C. § 3553(a). The U.S. Probation Office

1

("Probation") has calculated, under the U.S. Sentencing Guidelines (the "Guidelines"), a sentencing range of 87 to 107 months in prison. Count 1 carries a term of imprisonment which may not be less than 10 years or more than life, with a minimum term of imprisonment of 10 years; counts 2 and 3 carry terms of imprisonment which may not be less than 5 years and not more than 40 years.

Mr. Gonzalez Reyes believes that the United States Sentencing Guidelines (hereinafter "the Sentencing Guidelines" or "Guidelines") should not be used to determine his sentence in this case, and respectfully requests that this Honorable Court impose a non-Guidelines sentence that is fair and substantially below any sentence suggested by the Guidelines.

## ARGUMENT

Under 18 U.S.C. § 3553(a), a sentencing court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in the second paragraph of the statute. In undertaking its analysis, the Court considers the advisory sentencing range recommended by the Guidelines and any relevant Guideline policy statements, as well as other traditional sentencing factors, such as:

(1) the nature of the offense and history and characteristics of the defendant;

(2) the purpose of sentencing;

(3) the kinds of sentences available;

(4) the Sentencing Guidelines;

(5) pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted disparities among similar offenders; and

(7) the need to provide restitution to victims.

18 U.S.C. § 3553(a).

Nearly 20 years after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), it is now "emphatically clear" that the "Guidelines are guidelines – that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). The Guidelines are no longer "the only consideration" at sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Rather, the Guidelines merely provide a "starting point" for the Court's sentencing considerations. *Id.*; accord *Cunningham v. California*, 549 U.S. 270 (2007). The Court is to impose its sentence after "mak[ing] an individualized assessment based on the facts presented" in each particular case. *Id*. The Court need not find "extraordinary circumstances to justify a sentence outside of the Guidelines range." *Id. at 47*.

As one district court judge has put it, the Guidelines' "most fundamental flaw is the notion that the complexity of human character and conduct can be rationally reduced to some arithmetic formula."[1] This is especially true in a narcotics case such as this, where the sentencing range is largely determined by escalating loss enhancements pursuant to USSG §§ 2B1.1, an increasingly criticized approach that usually results in draconian advisory Guidelines. See, e.g., *United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006) (describing "the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense."); see also *United States v. Parris*, 573 F. Supp. 2d 745, 754 (E.D.N.Y. 2008) (noting that despite the fact that the Guidelines "reflect Congress' judgment as to the appropriate national policy for such crimes . . . this does not mean that the Sentencing Guidelines for white-collar

---

[1] Terry Carter, Rakoff's stance on the SEC draws fire, praise—and change: The Judge Who Said No, ABA Journal, Oct. 2013, at 53.

3

crimes should be a black stain on common sense" and sentencing defendant "to a term of incarceration of 60 months in the face of an advisory guidelines range of 360 to life."). The Supreme Court's decisions in *Gall, Cunningham,* and *Kimbrough v. United States*, 552 U.S. 85 (2007), significantly broadened the discretion of courts to impose a less stringent sentence than the one suggested by the Guidelines, and in this case the Court should exercise its broad discretion and impose a sentence substantially below the statutory minimum.

**The Nature and Circumstances of the Offense**

    **Offense Conduct**

In this case, Mr. Gonzalez Reyes pled guilty to one count of conspiracy and two counts of distribution and possession with intent to distribute different amounts of a controlled substance. The offense conduct is set forth in detail in the Statement of the Offenses and Other Acts filed on October 8, 2021, which Mr. Gonzalez Reyes accepted during his change of plea hearing.

    The facts involve a relatively small investigation that lasted from approximately June 7, 2019 to August 29, 2019. With regard to the distribution offenses, Mr. Gonzalez Reyes has admitted that he engaged in two sales to the confidential witness.

    The Count Two distribution occurred via a controlled purchase on June 8, 2019 and it involved the sale of a 200 grams of fentanyl and heroin.  The Count Three distribution occurred on August 5, 2019 in Worcester and it involved 300 grams of fentanyl and 40 grams of heroin.

## THE SENTENCING GUIDELINES CALCULATIONS

There does not appear to be a dispute between the Defendant and the United States regarding the proper calculation of Mr. Gonzalez Reyes's applicable sentencing range under the United States

Sentencing Guidelines. The parties have agreed that Mr. Perez is responsible for 1.05 kilograms of fentanyl and 39.9 grams of heroin. See generally PSR ¶ 38. Accordingly, the Converted Drug Weight applicable to Mr. Gonzalez Reyes is between 1,000 kg and 3,000 kg, for a base offense level of 30.

After a three-level reduction for Mr. Gonzalez Reyes's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 (a-b), and an additional two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(18), Mr. Gonzalez Reyes's final offense level in this case should be 25. In addition, because Mr. Gonzalez Reyes has no criminal history, see PSR ¶¶ 49-51, his Criminal History Category is I. PSR ¶ 51. Accordingly, the sentencing range applicable to Mr. Gonzalez Reyes under the Sentencing Guidelines in this case is 57-71 months. See U.S.S.G., Chapter 5, Part A. Notwithstanding the Defendant's agreement with the government regarding the above-referenced calculations, the Government and Probation Office have taken a different approach in the PSR, concluding that Mr. Gonzalez Reyes's applicable total offense level is 29 and that his guideline imprisonment range is therefore 87-108 months. It is also their position that Mr. Gonzalez Reyes is ineligible for Safety Valve relief because he was a "leader".

**Safety Valve Eligibility**

This Court should find that Mr. Gonzalez Reyes is indeed eligible for safety valve relief under 18 U.S.C. § 3553(f), which would allow the court to impose a sentence below the mandatory minimum 10-year sentence. Mr. Gonzalez Reyes bears the burden of proving his eligibility for safety valve by a preponderance of the evidence.

Mr. Gonzalez Reyes must establish five criteria: 1) that he does not have more than one criminal history point; 2) that he did not use violence or possess a firearm in connection with the

offense; 3) the offense did not result in death or serious bodily injury to a person; 4) that he was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise; and 5) that he has truthfully provided to the Government all information and evidence that he has concerning the offense.

Mr. Gonzalez Reyes meets the first, second, third and fifth criteria. Criterion four is at issue. The Government and the PSR cite Mr. Gonzalez Reyes as a "leader" and therefore ineligible for Safety Valve relief, but Mr. Gonzalez Reyes states that despite asking the co-defendant Moises Garcia to deliver the drugs to the confidential witness that he was not a leader.

The court may draw on all "relevant conduct" when determining whether Mr. Gonzalez Reyes was an "organizer or leader" for the purposes of the guidelines.   See, e.g., *United States v. Ruiz-Batista*, 956 F.2d 351, 353-54 (1st Cir.1992).   The guidelines direct the sentencing court to a variety of factors in making this determination.

Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

In the case before the Court, there is no evidence that Mr. Gonzalez Reyes had any degree of control or authority over Moises Garcia.  Garcia did not get paid by Mr. Gonzalez Reyes, and could not get fired as he was never an employee in any sense of the word.  Mr. Gonzalez Reyes ran a small, one-person operation and Moises Garcia was one of his customers who lived in the

Worcester area. Garcia was an experienced independent drug dealer, who in an effort to engender favored customer status offered to save Mr. Gonzalez Reyes unnecessary trips from Providence to Worcester by holding some of his drugs and to deliver them to customers. This allowed Garcia to maintain a steady supply of drugs for his own business. Garcia delivered to the confidential witness on two occasions only and did not deliver to any other customers of Mr. Gonzalez Reyes. Garcia was not paid for his efforts. That was the extent of their relationship. Mr. Gonzalez Reyes did not exert any power or authority over Moises Garcia. In the end, Mr. Gonzalez Reyes asked Moises Garcia to make the deliveries but did not order him to do so as a boss, leader or supervisor would. This was not a case of "drug dealer" and "mule". Mr. Gonzalez Reyes neither recruited Moises Garcia nor encouraged him to be in the business of selling drugs. That was all Moises Garcia's doing. The Court should examine the relatively small investigation that took Mr. Gonzalez Reyes down and the relatively short amount of time it took to do so to determine that this was a small enterprise operated by one person. Mr. Gonzalez Reyes was not a leader as contemplated by §3B1.1(c).

**The History and Characteristics of the Defendant**

    **Personal Life**

Mr. Gonzalez Reyes is 36 years, the average age of offenders in federal court in the fiscal year 2018. [2] Mr. Gonzalez Reyes was born in the Dominican Republic to two parents who could not be bothered to raise him. In turn, his maternal grandmother raised him. His parents lived on two different continents. When he was 14 years old he lived with his mother in Switzerland. That

---

[2] According to the Overview of Federal Criminal Cases Fiscal Year 2018 issued by the United States Sentencing Commission.

was short-lived and he moved to Spain at the age of 16. In 2014, Mr. Gonzalez Reyes arrived legally to the United States with a tourist visa. He lived in the Bronx, NY and finally in Providence, RI.

While Mr. Gonzalez Reyes has had several romantic relationships in his life, he has seemed to settled down in Rhode Island with Angelina Martinez with who he has a beautiful four year old daughter, Yasmelys Martinez. Angelina's love and support for Mr. Gonzalez remains intact and strong.

During his adult life, Mr. Gonzalez Reyes has been employed in various capacities in various industries including construction work in Spain, factory work, delivery driving, used car sales, and other work in the U.S. He has been detained since his arrest at the Donald Wyatt facility in Central Falls, RI where he has been working in the kitchen, waking up at 4:30A.M. for a 5A.M. shift and works until 1P.M.

These circumstances are put forth not to justify Mr. Gonzalez Reyes's criminal conduct, but to highlight to the Court that the facts that make up the Statement of Conduct are indeed a complete and absolute aberration of the life Mr. Gonzalez Reyes was living and had wanted to live. Mr. Gonzalez Reyes comes from humble beginnings, and has no prior criminal record, neither as an adult nor as a juvenile.

Lastly, there is no risk of recidivism in light of the very harsh lesson that Mr. Gonzalez Reyes has already learned. A number of other characteristics make recidivism highly unlikely, including Mr. Gonzalez Reyes's employment history and lack of prior criminal involvement.

## **CONCLUSION**

For all of the foregoing reasons, we respectfully request that the Court impose a sentence significantly below the statutory minimum sentence in this case.

                                                                   Respectfully submitted,

                                                                   /s/   John Benzan
                                                               John Benzan, Esq. BBO#555874
                                                               P.O. Box 620667
                                                               Newton Lower Falls, MA 02482
                                                               (617) 733-7723
                                                               johnbenzan@msn.com

March 7, 2022

## **CERTIFICATE OF SERVICE**

I, John Benzan, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 8, 2022.

/s/ John Benzan._____
John Benzan